**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.  JACK TALBOT MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  19-CV-73-CVE-JFJ |
| | ) | |
| 1.  CITY OF TULSA, a municipal | ) | |
| Corporation and the Tulsa Police | ) | |
| Department; | ) | |
| 2.  JOSHUA DUPLER, | ) | |
| 3.  ANTHONY FIRST, and | ) | |
| 4.  KURT DODD, individually | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JOSHUA DUPLER'S, ANTHONY FIRST'S, AND KURT DODD'S
<u>MOTION TO DISMISS</u>**

The Defendants, Joshua Dupler ("Dupler"), Anthony First ("First"), and Kurt Dodd ("Dodd") respectfully request the Court dismiss Plaintiff Jack Talbot Morris' ("Morris") Second Amended Petition filed in Tulsa County District Court, State of Oklahoma on January 28, 2019, which was removed to this Court on February 7, 2019 [Dkt. No.  ].  Pursuant to Fed. R. Civ. P. 12 (b) (6), Defendants request dismissal on the following grounds:

(1)     Plaintiff's Second Amended Petition fails to state a claim upon which relief can be granted against Defendants. Plaintiff fails to state a claim for Assault and Battery (First Claim for Relief); fails to state a claim for Negligence/Gross Negligence (Second Claim for Relief); and fails to state a claim pursuant to 42 U.S.C. § 1983 for a violation of his rights under the Fourth Amendment to the United States Constitution (Third Claim for Relief);

(2)     Defendants are entitled to qualified immunity; and

(3)     Plaintiff's Second Amended Petition fails to state any facts supporting a claim for punitive damages against Defendants.

1

## INTRODUCTION

On August 16, 2017, at approximately 11:00 a.m., Tulsa Police Department ("TPD") officers Dupler, First, and Dodd were attempting to arrest two individuals driving a stolen van in the area of 4900 S. Harvard Avenue. [Second Amended Petition, ¶ 9]. The passenger in the van was arrested without incident, but the driver fled on foot through an adjacent neighborhood. [Second Amended Petition, ¶ 10].

In an effort to locate the driver, TPD officers established a perimeter of the area, including a pasture and red barn owned by Morris, who used the barn to stable several horses. [Second Amended Petition, ¶¶ 11, 12]. A neighbor called Morris to inform him that one of his horses was scared by the commotion associated with TPD's search for the suspect and that the horse was running into fencing. [Second Amended Petition, ¶¶ 13, 14].

Officer First arrived on the scene and took up a position down the street from the gate leading to the barn. Morris arrived immediately behind First, drove past him, and headed up the street to the gate leading to his barn. Despite the police presence, Morris exited his truck, unlocked the gate, and went through the gate. [Second Amended Petition, ¶¶ 15-17]. Dodd commanded Morris to leave the barn area.  First arrived seconds later and told Morris to step through the gate and away from the barn. Morris tried to explain that he wanted to calm the horse out of concern for the safety of the animal as well as for the safety of others in the area. [Second Amended Petition, ¶¶ 18-20].

Dodd and First informed Morris that they were looking for a potentially armed felony suspect and ordered him to back away. Morris ignored the officers' commands and continued trying to open the gate. Officers again yelled commands at Morris to stop trying to open the gate and to back away. Morris yelled back that he was not going to comply. Morris turned

and proceeded back towards the gate to the barnyard. [Second Amended Petition, ¶ 22]. The TPD officers made the decision to leave a position of safety to remove Morris from a position of danger.

Morris refused to comply and fought the officers' efforts. In an effort to gain compliance, the officers first deployed OC Spray. [Second Amended Petition, ¶23]. Due to Morris' highly agitated state, he fought the officers and refused their commands despite the OC Spray. The officers used force to pin Morris on the ground.  He refused to show his hands and refused to comply with the officers' commands. The officers struck Morris to gain compliance. [Second Amended Petition, ¶ 28]. Then, the officers forcibly took Morris into custody.

Morris was charged with two felony counts of assault and battery on a police officer, a misdemeanor charge for resisting, and a misdemeanor charge for obstruction. [Second Amended Petition ¶ 33]. The Tulsa County District Attorney's Office dismissed the felony counts, but Morris pled guilty to the misdemeanor charges of Obstruction and Resisting. Those charges have been expunged, however, there is a pending motion to Unseal the Records (Tulsa County District Court Case No. CF-2017-4683).

The use of force by officers Dupler, First, and Dodd was necessary to remove Morris from an area of danger (he was potentially in the line of fire had the suspect begun shooting) and to gain compliance to arrest. The officers' conduct was investigated by the Tulsa Police Department. The officers were found to have acted WITHIN POLICY by their chain of command and were exonerated of any wrong doing.

On January 28, 2019, Morris filed a Second Amended Petition alleging violations, pursuant to 42 U.S.C. ¶ 1983, of his Fourth Amendment rights (excessive force) against all

defendants. Morris also alleges claims for Assault, Battery, and Negligence (excessive force) against Dupler, First, and Dodd. Morris alleges negligence claims against the City for Excessive Force and Failure to Supervise.  He also alleges he is entitled to punitive damages against all defendants.

## I.   **ARGUMENT AND AUTHORITIES**

### A.  **PLAINTIFF FAILS TO STATE CLAIMS FOR ASSAULT/BATTERY, NEGLIGENCE, OR FOR A CONSTITUTIONAL VIOLATION.**

The current standard to be followed by a district court when considering a motion to dismiss under Rule 12(b)(6) was summarized by the Tenth Circuit in *Robbins v. State of Oklahoma, ex rel. Dept. of Human Services,* 519 F.3d 1242 (10th Cir. 2008), as follows:

> [T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." [*Bell Atlantic Corp v. Twombly*], 550 U.S. 544, 570, (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider:*
>
> > the mere metaphysical possibility that <u>some</u> plaintiff could prove <u>some</u> set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for **these** claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

519 F.3d at 1247 (emphasis in original); *see also Dodds v. Richardson,* 614 F.3d 1185, 1202 (10th Cir. 2010).

As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 536 U.S. 662, 679, (2009) (quoting Fed.R.Civ.P. 8(a) (alterations in original).  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.  The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins,* 519 F.3d at 1249.

In the context of § 1983 claims, "plausibility" refers to the scope of the allegations in the complaint.  If they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action", then such allegations may be inadequate to overcome a motion to dismiss for qualified immunity. *Id.* at 1247-48.  A complaint must present factual allegations that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Here, none of the allegations in Plaintiff's Second Amended Petition rise beyond the "speculative" level.  As such, all allegations against officers Dupler, First, and Dodd should be dismissed.

### 1. PLAINTIFF FAILS TO STATE A CLAIM FOR ASSAULT/BATTERY OR NEGLIGENCE/GROSS NEGLIGENCE.

The Oklahoma Supreme Court recognized in *Morales v. City of Oklahoma City,* 2010 OK 9, 230 O.3d 869, that given the nature of a police officer's duties, the duty of care is significantly different than that of an ordinary citizen.

> The basic formulation of the standard of care is not directly applicable to a police officer making an arrest where exposure of the suspect to injury is an inherent part of the activity.  All arrests involve the use of some restraint, interference with the arrestee's liberty and the exercise of custodial control over another person. Each of these actions poses some risk of harm to the arrestee.  Even when an arrest is accomplished with minimal force, an offensive contact takes place.  **If police officers were exposed to suit every time the risk of harm inherent in an arrest culminated in actual harm, law enforcement would grind to a halt.**

*Id* at ¶ 25 (emphasis in original).

The Court concluded:

> We therefore hold that a police officer has a special dispensation from the duty of ordinary care not to endanger others.  **A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest.** In applying this standard, an officer's subject mistake of fact or law is irrelevant, including whether he (she) is acting in good or bad faith.  The question is whether objective facts support the degree of force employed.

*Id* at § 26. (emphasis in original)

Taken as true, the facts Plaintiff alleges in his Second Amended Petition are: the Defendant officers had established a perimeter around Plaintiff's property that included his barn; the perimeter was necessary because the officers were searching for a possibly armed suspect; despite being told not to breach the perimeter, Plaintiff refused to exit to a position of safety; and he ignored repeated commands from the officers.  For the safety of the Plaintiff and the officers, the officers attempted to move him to a safe area.  Plaintiff violently resisted. He continued to resist after the deployment of OC Spray. The officers deployed physical holds, yet Plaintiff continued to resist.  Plaintiff, despite repeated commands, refused to show his hands. The officers finally deployed a strike and were able to handcuff and arrest him.

The State of Oklahoma has specifically immunized police officers from criminal liability for Assault and Battery when affecting a lawful arrest. Pursuant to 21 O.S. § 643 (1), to use or attempt to offer to use force or violence upon or toward the person of another is ***not*** unlawful "when necessarily committed by a public officer in the performance of any legal duty".

If police officers were liable for the civil torts of assault and battery every time they arrested a suspect, as the Oklahoma Supreme Court held in *Morales,* "law enforcement would grind to a halt".  These officers had a legal duty to take Morris into custody. These allegations, on their face, do not lead to the conclusion that the officers' conduct was objectively unreasonable and that officers Dupler, First, and Dodd are liable for the torts of Battery or Assault or Negligence/Gross Negligence.  Plaintiff has failed to state a claim for Assault and Battery, thus the claims must be dismissed against these defendants.

Given the allegations set forth in Plaintiff's Second Claim for Relief (Negligence/Gross Negligence), this Court can find, as a matter of law, that Plaintiff has failed to state a claim. Plaintiff has used only "conclusory" allegations that defendants owed a duty, breached a duty, and are liable for negligence/gross negligence.  (See Second Amended Petition, ¶¶ 67-69). These allegations do not meet the pleading standards set forth by the United States Supreme Court in *Ashcroft v. Iqbal,* 536 U.S. 662, 679, (2009) (quoting Fed.R.Civ.P. 8(a) (alterations in original).

### 2.   PLAINTIFF FAILS TO STATE A CLAIM FOR A FOURTH AMENDMENT VIOLATION

In his Third Claim for Relief, Plaintiff alleges officers Dupler, First, and Dodd used objectively unreasonable force in violation of the Fourth Amendment.  The courts have made it clear over the years that the right to make an arrest or investigatory stop carries with it

the **right** to use physical coercion to affect the arrest. *See Terry v. Ohio,* 392 U.S. 1, 22-27 (1968) (emphasis added).

Plaintiff's conclusory allegations, however, do not meet the *Ashcroft* standards set forth by the United States Supreme Court. These threadbare allegations do not allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff has failed to state a 42 U.S.C. § 1983 claim.

### B.  DEFENDANTS DUPLER, FIRST, AND DODD ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Claims brought against police officers in their "individual capacity" are subject to the defense of qualified immunity. Because qualified immunity is "an immunity from suit rather than a mere defense to liability…it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis deleted). The United States Supreme Court has determined that "resolving immunity questions at the earliest possible stage in litigation" is important. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam).*

In responding to an assertion of a qualified immunity defense, the plaintiff must satisfy "a heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations and internal quotations omitted). First, the plaintiff must establish that the particular defendant violated a specific constitutional right. *Id.* (citations and internal quotations omitted). Second, the plaintiff must prove that the particular right was clearly

8

established when the conduct occurred.  *Id.* (citations omitted); *see also Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994).

The U.S. Supreme Court grants the district courts discretion when considering these factors. *Pearson v. Callahan,* 555 U.S. 223, 225 (2009). If the plaintiff fails to satisfy either part of the two-part inquiry, the court should grant the defendant qualified immunity. *Pearson v. Callahan,* 555 U.S. 223, 232-36 (2009). Finally, the plaintiff bears the burden of proving that his or her constitutional rights were violated. *Medina*, *supra,* 252 F.3d at 1128. The plaintiff must establish that "'the contours of the right are sufficiently clear' that every 'reasonable official would understand that what he is doing violates that right.'" *Ashcroft v. Al-Kidd,* 131 S. Ct. 2074, 2083 (2011) (*quoting Anderson, supra*).

To prove that a particular right was clearly established, the plaintiff must offer a "Supreme Court or Tenth Circuit opinion on point" (although identical facts are not required), or must establish "that his or her proposition is supported by the weight of authority from other courts."  *Id*.  The standard is not how well established any given right is, but rather, how clear it is that the right is being violated. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

If the plaintiff satisfies both parts, the defendant may still prevail on the defense of qualified immunity because the objectively reasonable standard requires district courts to evaluate the facts from the perspective of an official who is "prudent, cautious and trained." *U.S. v. Santana Garcia*, 264 F.3d 1188, 1192 (10th Cir. 2001). "The subjective belief of the [government official] is not dispositive," *Id.*, and "[e]vidence concerning the defendant's subjective intent is simply irrelevant" to the objectively reasonable standard. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Qualified immunity leaves "ample room for mistaken

judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Ashcroft,* 131 S. Ct. at 2085 (2011) (quoting *Malley*).

### i.    Defendants did not violate Plaintiff's Fourth Amendment Rights.

It is well settled in Fourth Amendment jurisprudence that, "where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures." *Graham*, 490 U.S. at 394.  The "reasonableness" of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out.  *Id.* Determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell,* 441 U.S. at 559. Its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Garner,* 471 U.S. at 8-9.

Moreover, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry,* 392 U.S. at 20-22. "'Not every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Police officers are often required to make "split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In applying the standards above, the Tenth Circuit has said that even "deadly force [is] justified under the Fourth Amendment if a reasonable officer in the defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (citing *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)). In *Blossom v. Yarbrough*, 429 F.3d 963 (10th Cir. 2005), the Court, analyzing a case in which an individual had advanced on a Sherriff's Deputy in what "reasonably appear[ed] to the Court to be an effort [by the decedent] to get his weapon" found that under those circumstances, the decedent "posed an immediate threat to the safety of the officer, and the use of deadly force, while tragic, was reasonable." *Id.* at 968.

The same analysis holds true in this case before the Court. Even under the limited and self-serving facts stated in Plaintiff's Second Amended Petition, it is clear that officers Dupler, First, and Dodd did not violate Morris' Fourth Amendment Constitutional right when they had to forcibly take him into custody after he breached the police perimeter and refused to leave a dangerous area that was potentially in the line of fire of a potentially armed felony suspect.

For his own protection, officers Dupler, First, and Dodd ordered Morris not to enter the gate. An angry and agitated Morris refused to obey these repeated commands. His actions

posed a risk to himself, as well as the officers, who had no idea whether Morris was armed. When the officers attempted to move Morris to a safe area, he refused and became combative. He refused to show his hands. He refused to comply with the commands of the officers in this rapidly evolving situation.

The officers' actions were not excessive and did not violate Morris' Fourth Amendment rights. Accordingly, in keeping with well-established Fourth Amendment jurisprudence, Plaintiff's Fourth Amendment claim should be dismissed against all defendants.

### ii. Plaintiff's Rights Were Not "Clearly Established".

Even if Plaintiff's allegations were sufficient to establish conduct on the part of the officers that would constitute a violation of his constitutional rights, he still cannot meet the second part of the *Medina* two-part burden to overcome the presumption of qualified immunity as his allegations fail to show his rights were "clearly established" at the time of the defendants' conduct. The U.S. Supreme Court has clarified further that for qualified immunity to be denied, precedent must "squarely govern" such that it is "beyond debate" that a constitutional violation occurred **in the specific context of the case, not in a general or broad sense** (emphasis added). *Mullenix v. Luna*, 136 S. Ct. 305, 308-12 (2015). Plaintiff must do more than identify a clearly established right in the abstract and allege it was violated: the contours of the law must be sufficiently clear that a reasonable official would understand what he is doing violates the established right. *Barnthouse v. City of Edmond,* 2003 OK 42, ¶ 20, 73 P.3d 840, 849; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

In *Mullenix*, a trooper was alleged to have used excessive force when he shot and killed a motorist fleeing arrest while attempting to disable his vehicle. While the law was clearly established that, absent a sufficient threat, the use of deadly force violated the Fourth Amendment, the U.S. Supreme Court found the trooper was entitled to qualified immunity. It cited to its opinion in *Ashcroft* and explained "[w]e have repeatedly told courts ... not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd, 563 U.S. 731, 742 (2011).* The dispositive question is "whether the violative nature of *particular* conduct is clearly established. (emphasis added)". *Id.*

Given the facts as alleged by Morris, he cannot meet the second element to establish that his Fourth Amendment claims were clearly established in law. There is no precedent that would have informed officers Dupler, First, or Dodd, under the circumstances of this case, that their conduct would be considered a violation of Morris' Fourth Amendment constitutional rights. Under these facts alleged by Morris, he: refused to comply with the officers' lawful commands; placed himself and the officers in potential danger by breaching the secure perimeter; and forcibly resisted the officers when they tried to remove him from the area of danger. Morris did not comply after numerous commands. He refused to comply after the deployment of OC Spray. He refused to comply after the officers used physical holds. Finally, after deploying a strike to Morris, the officers were able to control and handcuff him. Given this situation, Morris' rights were not clearly established, and the officers' actions were not objectively unreasonable.

Morris cannot satisfy either part of the two-part burden required to defeat the qualified immunity claims of officers Dupler, First, or Dodd. Defendants respectfully request the Court dismiss Morris' 42 U.S.C. § 1983 claims.

### C. PLAINTIFF FAILS TO PLEAD SUFFICIENT FACTS THAT WOULD RENDER DEFENDANTS SUBJECT TO PUNITIVE DAMAGES.

While available in § 1983 actions, "punitive damages are to be awarded **only** when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)) (emphasis added).

Plaintiff alleges that when officers "Dupler, First and Dodd assaulted and battered Mr. Morris, they were acting within the scope of their employment and the Defendants [*sic*] acts 'were incident to…service[s] being performed for their employer or ar[ose] out of emotional response to actions being taken for the employer". (Second Amended Petition, ¶ 61] These allegations are re-alleged in Plaintiff's Third Claim for Relief (Excessive Use of Force Against Defendants Dupler, First, and Dodd-4th [*sic*] Amendment; 42 U.S.C. § 1983). (Second Amended Petition, ¶73). Plaintiff alleges the defendants' actions were "excessive, objectively unreasonable, contrary to training, policy, and established standards of law enforcement practice. (Second Amended Petition, ¶77). Plaintiff then alleges nothing more than conclusory statements that the "excessive use of force described herein, also involved reckless, callous and deliberate indifference to Mr. Morris' federally protected rights".

The allegations within the Second Amended Petition regarding Plaintiff's Fourth Amendment violations and the allegations of Assault, Battery, and Gross Negligence are insufficient to demonstrate that officers Dupler, First, and Dodd knowingly and maliciously violated the law. Plaintiff has not alleged facts that rise to the level required for the imposition of punitive damages, thus these claims must fail.

## CONCLUSION

Plaintiff has failed to properly allege a 42 U.S.C. § 1983 claim against these defendants. Further, Defendants Dupler, First, and Dodd are entitled to qualified immunity. Plaintiff has not alleged facts sufficient to establish a constitutional violation or that this right was clearly established. These claims fail and should be dismissed against these defendants. Further, Plaintiff has not alleged facts sufficient to warrant the imposition of punitive damages under any of Plaintiff's claims against these defendants. The Defendants respectfully request that these claims be dismissed in their entirety.

Respectfully Submitted,

CITY OF TULSA,
a municipal corporation

DAVID E. O'MEILIA,
City Attorney

BY:    /s/ T. Michelle McGrew
        T. Michelle McGrew, OBA #20279
        Senior Assistant City Attorney
        R. Lawson Vaughn, III, OBA #21557
        Assistant City Attorney
        City Hall, One Technology Center
        175 East Second Street, Suite 685
        Tulsa, Oklahoma  74103
        (918) 596-7717 Telephone
        (918) 596-9700  Facsimile

## CERTIFICATE OF SERVICE

I, T. Michelle McGrew, hereby certify that on the 8th day of February 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Eric W. Stall
T. Brett Swab
Travis Horton
Zachary Underwood
Ben Fu
SWAB & STALL, PC
2021 South Lewis Avenue, Suite 520
Tulsa, OK 74104
estall@swabstall.com
tbswab@swabstall.com
thorton@swabstall.com
zunderwood@swabstall.com
bfu@swabstall.com

/s/T. Michelle McGrew
T. Michelle McGrew