UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JACK TALBOT MORRIS, )
 )
        Plaintiff, )
 )
v. ) Case No. 19-CV-0073-CVE-JFJ
 )
CITY OF TULSA, )
JOSHUA E. DUPLER, )
ANTHONY FIRST, and )
KURT DODD, )
 )
        Defendants.

**OPINION AND ORDER**

Now before the Court is Defendants Joshua Dupler, Anthony First, and Kurt Dodd's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 29). The individual defendants argue that they are entitled to qualified immunity from plaintiff Jack Talbot Morris' claims under 42 U.S.C. § 1983, and they also assert that plaintiff has failed to state a claim upon which relief can be granted under state or federal law. Dkt. # 29.

**I.**

On August 16, 2017, Tulsa Police Department (TPD) Officers Joshua Dupler, Anthony First, and Kurt Dodd were attempting to arrest two suspects who had stolen a van, which was found in the area near 4900 South Harvard Avenue in Tulsa, Oklahoma. Dkt. # 28, at 2. The officers arrested one of the suspects, Antonio Luna, but the driver fled on foot into a nearby neighborhood. Id. at 3. TPD officers set up a perimeter of the area, including a pasture and barn owned by Morris. Id. at 3. Morris states that he uses the barn to stable his horses, including a gray horse that he had recently purchased for roping competitions. Id. He claims that the presence of TPD officers spooked the

horse.  Id.  A neighbor called Morris and told him that his horse was acting frantically, and Morris went to the barn to check on his horse.  Id.

Morris alleges that TPD Officer Edmund Parrish arrived at a gas station several hundred yards south of the barn and saw the fleeing suspect.  Id.  Parrish pursued the suspect past the barn and into a parking lot, and Morris claims that Parrish did not see the suspect enter the barn.  Id.  Morris claims that he arrived at the barn just behind First, and he drove past First up a street leading to the barn.  Id.  Morris alleges that several TPD officers had already searched the barn before he arrived.  Id.  Morris exited his vehicle, unlocked the gate, and proceeded to the barn to calm his horse.  Id. at 4.  Dodd and First commanded Morris to step through the gate and leave the barn, and Morris states that he complied with the order while explaining that he needed to calm his horse.  Id.  TPD Officer Brent Williams brought a K-9 unit and searched the barn while Morris and First were talking, and Williams announced that the barn was clear.  Id.

Morris claims that he was standing outside the gate in compliance with an order from the officers when First lunged at him.  Id.  First attempted to grab Morris' shirt, but he slipped and fell.  Id.  Morris turned and walked back toward the gate, and First deployed OC spray from about 10 to 15 feet away.  Id.  The OC spray hit Morris on the head and face, and First knocked Morris onto the ground as Morris was attempting to wipe the spray out of his eyes.  Id. at 5.  Morris claims that he was on his stomach yelling "I'm done" when Dodd jumped onto Morris' back, fracturing Morris' elbow.  Id.  First and perhaps another TPD officer were also on top of Morris while he continued to yell "I'm done," and Dupler jumped onto Morris' back and began punching Morris in the face.  Id.  Morris claims that the officers were already on notice that the suspect was not in the barn and they

were contacted by radio with information that the suspect was in a nearby parking lot under a car. Id. at 5-6.

Morris was transported to a hospital, where he was treated for a laceration above his eye, a fractured left elbow and two orbital fractures, a broken nose, and many bruises and contusions. Id. at 6. After Morris was treated, he was transported to the Tulsa County Jail and booked on two charges of felony assault and battery on a police officer and misdemeanor charges of resisting arrest and obstructing a police officer. Id. The state of Oklahoma filed a criminal information charging Morris with felony counts of assault and battery upon a police officer and assault on a police officer, and misdemeanor counts of obstructing an officer and resisting an officer. Id. at 8. Morris subsequently pled guilty to the misdemeanor charges, but he claims that he was not provided exculpatory evidence concerning the validity of his arrest before he changed his plea. Id.

On August 14, 2018, Morris filed this case in Tulsa County District Court alleging state law claims of assault and battery, negligence, and a claim for relief under 42 U.S.C. § 1983 based on the use of excessive force by the police officers who arrested him. Dkt. # 2-1, at 9-20. Defendants removed the case to this Court, and plaintiff sought leave to file an amended complaint. Dkt. # 26. Plaintiff filed an amended complaint adding a claim under § 1983, alleging that he was unlawfully arrested in violation of the Fourth Amendment. Dkt. # 28. Dupler, First, and Dodd have filed a motion to dismiss the amended complaint on the grounds that they are entitled to qualified immunity from plaintiff's § 1983 claims and that plaintiff has failed to state a claim upon which relief can be granted. Dkt. # 29.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Dupler, First, and Dodd argue that they are entitled to qualified immunity from plaintiff's § 1983 claims, because plaintiff cannot show that his constitutional rights were violated or that the law

4

supporting the alleged constitutional violations was clearly established. Dkt. # 29. Plaintiff responds that defendants are improperly using a motion to dismiss to dispute the allegations contained in the amended complaint, and that defendants are not entitled to qualified immunity based on the facts alleged in the amended complaint. Dkt. # 37. Plaintiff has alleged two § 1983 claims against Dupler, First, and Dodd. Plaintiff alleges that the defendants used excessive force to arrest him in violation of the Fourth Amendment (third claim for relief), and that defendants unlawfully arrested him having probable cause to believe that he had committed a crime (eighth claim for relief).

The Court will initially address whether it can consider evidence outside the pleadings in ruling on the motion to dismiss. Defendants ask the Court to consider deposition testimony that allegedly contradicts certain allegations of the amended complaint. Dkt. # 29, at 3. A district court must ordinarily convert a motion to dismiss into a motion for summary judgment if the parties request that the court consider evidence outside of the pleadings. GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). However, a district court may consider a document that is referred to in the complaint and is central to plaintiff's claims, even if a copy of the document has not been attached to the complaint. Id. The Court declines to consider evidence outside the pleadings in ruling on defendants' motion to dismiss. Defendants have cited no authority suggesting that deposition transcripts qualify as a "document," and the Court finds that it would be improper to allow defendants to rebut the allegations of the complaint with selective and self-serving evidence. Cohen v. Lockwood, 2003 WL 21384313 (D. Kan. June 12, 2003) (declining to consider deposition testimony because purpose of motion to dismiss is merely to test the allegations of the complaint). The limited class of cases in which evidence outside the complaint can be considered in ruling on a motion to dismiss typically involves a contract or insurance action

5

where the contents of the document are undisputed and the parties agree that the document is central to resolution of the case. Deposition testimony would require an assessment of witness credibility that could not be made by the Court even in ruling on a motion for summary judgment, and the Court would be required to permit plaintiff to offer evidence to rebut the evidence offered by defendants. The Court will consider only the allegations of the amended complaint in ruling on the motion to dismiss.

**A.**

Section 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law" of the United States. "The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must show that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the

constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). Plaintiff bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Court will initially consider plaintiff's claim that he was unlawfully arrested in violation of the Fourth Amendment (eighth claim for relief). The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. In the context of a false arrest claim, "an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). Probable cause exists when a police officer has sufficient information "to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). This is an objective standard and a court must consider the totality of the circumstances to determine whether a reasonable officer would have believed there was probable cause to make an arrest. Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2011). Probable cause "is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information." Cortez v. McCauley, 478 F.3d 1108, 1121 (10th Cir. 2007). Once probable cause is established, a police officer is not required to search for exculpatory evidence before arresting a suspect. Id. A defendant is entitled to qualified immunity from a false arrest claim if there was "arguable probable cause" to make an arrest. Kaufman, 697 F.3d at 1300. "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if

mistaken, belief that probable cause exists." Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014). "The proper inquiry in a § 1983 claim based on false arrest is not whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had." Crawford ex. rel. Crawford v. Kansas City, Kansas, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

Both parties make general arguments concerning the validity of plaintiff's arrest, but the Court must focus on the actual charges for which plaintiff was arrested. Plaintiff will not be able to show that his constitutional rights were violated if the facts alleged in his amended complaint support a finding that officers had probable cause to arrest him for any crime on August 16, 2017. Plaintiff alleges that he was arrested on two felony charges of assault and battery on a police officer and misdemeanor charges of resisting arrest and obstructing an officer. Dkt. # 29, at 6. Plaintiff's § 1983 claim for unlawful arrest will fail if defendants arguably had probable cause to arrest plaintiff for any crime, even if the police officers were allegedly mistaken about certain facts. A.M. v. Holmes, 830 F.3d 1123, 1139-40 (10th Cir. 2016) (qualified immunity determination is governed by a standard or arguable probable cause, and officer will be entitled to qualified immunity even if mistaken about the existence of actual probable cause).

Plaintiff alleges that TPD was investigating a vehicle theft and set up a perimeter that included his pasture and barn, and TPD Officers Dupler and Barnhart were located down the street from a gate leading to plaintiff's barn. Dkt. # 28, at 3. Plaintiff claims that several officers searched in and around the barn before he arrived and did not locate the suspect. Id. He arrived at his barn and he observed Dodd come from the back side of the barn. Id. at 4. First arrived soon after Dodd, and First commanded plaintiff to step through the gate and away from the barn. Id. Plaintiff claims

that he initially complied with First's command and he attempted to explain that he needed to calm his horse. Id. TPD Officer Williams searched the barn and announced that he did not find the suspects. Id. However, plaintiff also alleges that he was engaged in a verbal altercation with First, and he does not allege that he or First heard Williams' announcement. Id. Plaintiff alleges that First lunged at him in attempt to grab him by the shirt, but First lost his footing and fell. Id. Plaintiff claims that he turned and walked toward the gate, and First deployed OC spray that struck plaintiff on his head and face. Id. Plaintiff claims that he was booked on felony charges of assault and battery on a police officer and misdemeanor charges of resisting arrest and obstructing an officer. Id. at 6. There are no allegations suggesting that plaintiff was placed under arrest before First used OC spray and knocked plaintiff to the ground.

Plaintiff's argument that he was unlawfully arrested is based on his assertion that police had no authority to exclude him from his own property and that police knew or should have known that none of the suspects would be found in the barn. Dkt. # 37, at 5. However, he does not deny that he was initially seized for failing to comply with an order issued by a police officer, and he plainly alleges that he engaged in a verbal altercation with First and walked away from him after previously being ordered to step away from the barn. Dkt. # 28, at 4. Under Oklahoma law, "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office" is guilty of the misdemeanor offense of obstructing an officer. OKLA. STAT. tit. 21, § 540. It is also a misdemeanor offense to "knowingly resist[], by the use of force or violence, any executive officer in the performance of his duty. OKLA. STAT. tit. 21, § 268. Based on the allegations of the amended complaint, it is not clear that plaintiff could have been arrested for resisting arrest,

9

because § 268 requires the use of force or violence on the part of the accused.[1] However, plaintiff admits that he was involved in a verbal altercation with a police officer who was investigating a crime, and he does not deny that he walked toward the gate after previously being ordered to leave the barn. Dkt. # 28, at 4. Plaintiff was aware that police were looking for a suspect who could have been hiding in the barn, and plaintiff's actions were at a minimum distracting an officer involved in an ongoing investigation. Based on these facts alone, plaintiff was arguably committing the misdemeanor offense of obstructing a police officer in violation of § 540, and he has not adequately alleged a constitutional violation under the Fourth Amendment for unlawful arrest without probable cause.

Even if plaintiff could establish that his constitutional rights were violated, he also has the burden to show that his constitutional rights were clearly established when the incident giving rise to his arrest occurred. The Tenth Circuit has explained that law is clearly established if the contours of a constitutional right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Perry v. Durborow, 892 F.3d 1116, 1123 (10th Cir. 2018). The contours of a right are generally "sufficiently clear" only if the plaintiff "identif[ies] an on-point Supreme Court or published Tenth Circuit decision" or "shows 'the clearly established weight of authority from other courts [has] found the law to be as plaintiff maintains . . . .'" Id. District courts have been cautioned not to define a constitutional right "at a high level of generality" but, instead,

---

[1] For the same reason, the allegations of the amended complaint do not support an inference that plaintiff committed an assault or battery on a police officer that could qualify as assault or battery upon a police officer in violation of OKLA. STAT. tit. 21, § 649. However, this does not prevent defendants from attempting to show in a motion for summary judgment that plaintiff could have been arrested for the felony offense of assault and battery upon a police officer, because this could affect the Court's analysis as to plaintiff's excessive force claim.

"the clearly established law must be 'particularized' to the facts of the case." Id. To find that the law is clearly established, the district court must "identify a case where an offic[ial] acting under similar circumstances as [defendant]" was held to have violated the constitutional right at issue. Id. at 1124. In the section of plaintiff's response devoted to clearly established law, he focuses solely on cases concerning the use of excessive force, and he does not cite any cases related to unlawful arrest under the Fourth Amendment. Dkt. # 37, at 10-11. Plaintiff's response cites general law concerning the probable cause standard, but the Tenth Circuit has made held that such a high degree of generality is not sufficient to show that law is clearly established. Defendants are entitled to qualified immunity as to plaintiff's unlawful arrest claim (eighth claim for relief), because plaintiff has not met his burden to allege that a constitutional violation occurred or that the law supporting any constitutional violation was clearly established.

Plaintiff has a separate claim under § 1983 for the use of excessive force during his arrest (third claim for relief). The factual allegations concerning this claim are based on events that occurred after plaintiff began walking toward his barn after initially avoiding First's attempt to grab him. Plaintiff claims that First deployed OC spray from a distance of about ten to fifteen feet, and the spray struck plaintiff's head and face. Dkt. # 28, at 4. First allegedly knocked plaintiff to the ground, and plaintiff immediately told First "I'm done, I'm done." Id. at 4-5. Plaintiff alleges that Dodd "pounced onto his back and likely caused the fracture to [his] elbow." Id. at 5. He claims that First and Dodd were on top of him while he continued to yell "I'm done," and Dupler also jumped onto plaintiff and began punching him in the head. Id. Plaintiff claims that his arms and legs were being pinned by other TPD officers and he was unable to wipe the OC spray off his face. Id. Plaintiff claims Dupler, First, and Dodd continued to assault plaintiff even after being informed that

11

the robbery suspect was not on the premises. Id. at 6. Plaintiff was transported to a local hospital and treated for a laceration above his eye, a fractured left elbow, two orbital bone fractures, a broken nose, and multiple contusions or scrapes. Id.

Plaintiff alleges that police used excessive force to effect his arrest in violation of the Fourth Amendment. Id. at 15. The Fourth Amendment governs claims concerning the use of force for a warrantless arrest before a probable cause hearing has been held. Estate of Booker v. Gomez, 745 F.3d 405, 419 (10th Cir. 2014). In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court set out the standards governing excessive force claims under the Fourth Amendment, and as a general matter explained that the reasonableness of the force used requires a "balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396. The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight," and not "every push or shove . . . violates the Fourth Amendment." Id. The Court must consider factors such as the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Estate of Ceballos v. Husk, 919 F.3d 1204, 1213 (10th Cir. 2019). The reasonableness inquiry is wholly objective and "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." McCoy v. Meyers, 887 F.3d 1034, 1045 (10th Cir. 2018). The use of force may become unreasonable, even if the use of force is initially appropriate, if the person being detained is no longer a threat to the safety of police officers. Dixon v. Richer, 922 F.2d 1456, 1463 (10th Cir. 1991).

Plaintiff devotes much of his response to the issue of whether police knew or should have known that the robbery suspect was not in his barn. Dkt. # 37, at 4-6. The Court notes that the presence or absence of the robbery suspect is irrelevant to whether police used reasonable force to effect an arrest of plaintiff for a misdemeanor offense, and the focus of the Court's inquiry is whether the Graham factors suggest that the amount of force used was unreasonable. The Court has determined that defendants arguably had probable cause to arrest plaintiff for a misdemeanor, and the Court's analysis as to excessive force must consider whether police used reasonable force to arrest for the suspected misdemeanor offense.

Defendants offer little argument concerning the reasonableness of the force used to arrest plaintiff, and the Court finds that the facts alleged in the amended complaint are sufficient to state violation of plaintiff's constitutional rights under the Fourth Amendment. Plaintiff does not dispute that he walked away from First, but it is unclear from the facts alleged in the amended complaint why First would have deployed OC spray on plaintiff and subsequently knocked him to the ground without issuing any verbal commands to plaintiff. Due to the lack of clarity in the amended complaint, the Court does not conclude that the use of force was excessive at this point in the encounter. However, plaintiff alleges that he was shouting "I'm done" and offering no physical resistance to police officers when he was on the ground, and First and Dodd jumped on his back and broke his arm. Plaintiff claims that he continued to offer no resistance when a third officer, Dupler, arrived and began punching him in the head when his arms were pinned underneath him. The amended complaint contains no allegations that plaintiff was armed or that police believed that he had any type of weapon, and there are no allegations suggesting that defendant posed a risk to officer safety. The Court also takes into account that defendant was under arrest for a misdemeanor offense,

and the amount of force used was not commensurate with the severity of the offense. Plaintiff has adequately alleged facts that would establish a violation of his constitutional right to be free from excessive force during an arrest.

The Court must also consider whether the law giving rise to the constitutional violation is clearly established. In the context of excessive force cases, "there will almost never be a previously published opinion involving exactly the same circumstances" due to the fact-intensive nature of these claims. Casey v. City of Federal Heights, 509 F.3d 1278, 1284 (10th Cir. 2007). Courts apply a sliding scale to excessive force claims "in which 'the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" Easter v. Cramer, 785 F. App'x 602, 607 (10th Cir. Sep. 19, 2019) (quoting Casey, 509 F.3d at 1284).[2] In Morris v. Noe, 672 F.3d 1185 (10th Cir. 2012), the Tenth Circuit considered whether police could employ felony takedown procedures to arrest a suspect for a misdemeanor offense when the suspect did not immediately pose a danger to any police officer. Id. at 1196-97. Even though there was no case directly on point, the Tenth Circuit found that the Graham factors weighed so heavily against the use of force that a reasonable police officer would have understood that the amount of force used was not justified. Id. at 1197. For the purpose of ruling on defendants' motion to dismiss, the Court finds that plaintiff's allegations support an inference that the use of force was so egregious and unwarranted that no reasonable police officer would have used a similar amount of force under the circumstances, and plaintiff's constitutional

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

rights were clearly established. Defendants' request for qualified immunity as to plaintiff's excessive force claim is denied.

As to plaintiff's § 1983 claims, defendants also argue that plaintiff has failed to state a claim for a violation of his Fourth Amendment rights and that he has not alleged sufficient facts that would support an award of punitive damages. The Court has determined that Dupler, First, and Dodd are entitled to qualified immunity as to plaintiff's unlawful arrest claim, but the Court has found that they do not have qualified immunity as to plaintiff's excessive force claim. The Court has reviewed the motion to dismiss, and defendants' argument concerning failure to state a § 1983 claim are directed solely at the unlawful arrest claim. Dkt. # 29, at 14. This argument is moot based on the Court's decision to grant defendants' qualified immunity on this claim. Defendants argue that plaintiff has not alleged sufficient facts to warrant an award of punitive damages, because he has done nothing more than make conclusory allegations against defendants. Dkt. # 29, at 15. To award punitive damages under § 1983, a plaintiff must ultimately show that "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Burke v. Regalado</u>, 935 F.3d 960, 1038 (10th Cir. 2019) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)). The Court finds that it would premature to rule out the availability of punitive damages in this case, because the Court's inquiry is limited to the allegations of the amended complaint. Plaintiff alleges that Dupler, First, and Dodd initiated the use of force without any apparent provocation, and plaintiff claims that he suffered severe personal injuries when all three officers held him down and beat him. Plaintiff's allegations are not conclusory and give defendants adequate notice of the factual basis for his request for punitive damages.

**B.**

Dupler, First, and Dodd ask the Court to dismiss plaintiff's state law claims of assault and battery and negligence, and the Court will initially consider plaintiff's negligence claim against the individual defendants. The Oklahoma Supreme Court has addressed whether a police officer can be held liable for negligence if he uses an unreasonable amount force to arrest a person. In <u>Morales v. City of Oklahoma City ex rel. Oklahoma City Police Department</u>, 230 P.3d 869 (Okla. 2010), the Oklahoma Supreme Court explained that a police officer "does not stand in the same shoes as an ordinary citizen when it comes to using force against another person which exposes that person to a risk of injury," and a police officer using reasonable force to arrest a person is immune from the torts of assault and battery. <u>Id.</u> at 879. However, a police officer has a duty to refrain from using excessive force, and excessive force is defined as "physical force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity." <u>Id.</u> Force is often a necessary part of performing an arrest, but police must use "only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." <u>Id.</u> at 880. This is an objective inquiry and a court should not consider a police officer's mistake of fact or law or the police officer's good or bad faith, and the question is solely whether the police officer used an objectively reasonable amount of force. Id. The Oklahoma Supreme Court provided the following factors to guide the objective inquiry into the reasonableness of the force used in a particular situation:

> (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing

16

the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.

Id.

Applying the Morales factors, the Court finds that plaintiff has adequately alleged a negligence claim against Dupler, First, and Dodd. Police did not suspect that plaintiff was committing a violent offense and there are no allegations that he posed a risk of harm to police officers present at the scene. Instead, defendants argue that plaintiff created a risk of harm to himself by violating an order and police used force to move plaintiff to a "safe area." Dkt. # 29, at 12. Plaintiff claims that he was not resisting arrest after he was knocked to the ground and police escalated the level of force after plaintiff advised police that he was "done." Dkt. # 28, at 5. There are no allegations that police had prior knowledge about defendant or had any reason to believe that he was armed or possibly dangerous. Plaintiff alleges that three police officers used a significant amount of force to arrest him and caused him serious personal injury, even though police should have known that the robbery suspect was not present in the barn and that plaintiff was entering the barn only for the purpose of calming his agitated horse. The allegations of the amended complaint do not suggest that there were any exigent circumstances that required police to use force to effect plaintiff's immediate arrest. Plaintiff's allegations suggest that he was unhappy about the presence of officers on his property but he does not allege that he engaged in any violent behavior towards the police officers, and his allegations at least give rise to a factual dispute whether the amount of force used to arrest him was reasonable under the circumstances.

Plaintiff has also alleged state law claims for assault and battery against Dupler, First, and Dodd. Oklahoma follows the Restatement of Torts (Second) to define the torts of assault and battery

17

and, even though plaintiff has pled a single claim, assault and battery are distinct acts.  See Brown v. Ford, 905 P.2d 223 n.34 (1995) (overruled on other grounds).  A person is liable for assault if he "acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact" and "the other is thereby put in such imminent apprehension."  RESTATEMENT (SECOND) OF TORTS § 21.  To commit battery, a person must "act[] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact" and "a harmful contact with the person of the other directly or indirectly results."  RESTATEMENT (SECOND) OF TORTS § 13.  The Court has already determined that plaintiff's allegations are sufficient to show that the officer had probable cause to arrest plaintiff and, under Oklahoma law, the use of force against another person is not unlawful "[w]hen necessarily committed by a public officer in the performance of any legal duty . . . ."  OKLA. STAT. tit. 21, § 643(1).  However, even a police officer can commit the torts of assault and battery if the force used is excessive or unreasonable.  Payne v. Myers, 2015 WL 5775188 (N.D. Okla. Sep. 30, 2015); Thetford v. Hoehner, 2006 WL 964754, *6 (N.D. Okla. Apr. 12, 2006).  The Court has determined that plaintiff's allegations are sufficient to state a claim that excessive force was used to arrest him in violation of the Fourth Amendment and, for the same reasons, finds that plaintiff has adequately alleged a tort claim for assault and battery based on the allegedly excessive force used to arrest him.

**IT IS THEREFORE ORDERED** that Defendants Joshua Dupler, Anthony First, and Kurt Dodd's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. # 29) is **granted in part** and **denied in part:** defendants are entitled to qualified immunity as to plaintiff's claim for unlawful

arrest (eighth claim for relief), but the motion to dismiss is denied in all other respects. The eighth claim for relief is dismissed.

**DATED** this 31st day of December, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE