IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. JACK TALBOT MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  19-CV-73-CVE-JFJ |
| | ) | |
| 1. CITY OF TULSA, a municipal Corporation and the Tulsa Police Department; | ) ) ) | |
| 2. JOSHUA DUPLER, | ) | |
| 3. ANTHONY FIRST, and | ) | |
| 4. KURT DODD, individually | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT DAVID KLINGER**

Pursuant to Rule 702 of the Federal Rules of Evidence, Defendants City of Tulsa ("City"), Joshua Dupler ("Officer Dupler"), Anthony First ("Officer First"), and Kurt Dodd ("Sgt. Dodd") respectfully request the Court to exclude Plaintiff's use of force expert, David Klinger ("Klinger"), from providing expert testimony and to further exclude evidence from Klinger's report.  Klinger's opinions do not meet the requirements of Federal Rule of Evidence 702.  His opinions will not be helpful to the jury; are not based on sufficient facts; and are unreliable because he ignores the United States Supreme Court's definition of "reasonableness" in use of force cases.

**INTRODUCTION**

Plaintiff Jack Morris was arrested on August 16, 2017 after he failed to comply with lawful orders not to breach a police perimeter, assaulted two police officers, and violently resisted arrest. He was charged with two felony counts of assault and battery on a police officer, a misdemeanor for resisting, and a misdemeanor for obstruction.  Subsequently,

1

Morris pled guilty to a misdemeanor charge of Obstructing an Officer and a misdemeanor charge of Resisting by using force and violence upon Tulsa Police Department ("TPD") officers Anthony First, Joshua Dupler, and Sgt. Kurt Dodd.

Despite his guilty pleas, Morris filed a lawsuit in Tulsa County District Court against these three officers alleging assault and battery, negligence, and a claim under 42 U.S.C. § 1983 based on an alleged excessive use of force. Morris also alleges a negligence claim and a 42 U.S.C. § 1983 *Monell* claim against the City of Tulsa. Defendants removed this case to federal court.

On August 16, 2017 at approximately 11:00 a.m., Officer Dupler and several other TPD officers were pursuing a fleeing, potentially armed, car theft suspect who ran from the QuikTrip located at 4950 S. Harvard Avenue. At least two officers observed the suspect run across a nearby pasture and then run behind a red barn. Additional TPD officers, including Officer First and Sgt. Dodd, all armed, responded to a call to assist and set up a police perimeter around the barn and the apartment complexes in the area.

All events involving Morris' arrest and his subsequent allegations of excessive force took place near the gate leading to the red barn. As the officers searched for the suspect, maintained the perimeter, and waited on a K-9 officer to arrive to search the barn, Morris suddenly drove by several marked police cars, quickly exited his truck, and approached the locked gate that led to the barn.

At least four TPD officers repeatedly ordered Morris to get away from the gate because it was not safe until it had been cleared by the K-9 officer. Morris, angry and agitated, responded by yelling expletives at the officers. Sgt. Dodd, Officer First, and Officer

Dupler repeatedly ordered Morris to comply. He refused. Morris' dangerous and obstructive behavior escalated to the point that he assaulted the officers and violently resisted arrest.

Despite ample evidence to the contrary, Morris makes the incorrect and irrelevant claim that the K-9 officer had cleared the barn **before** his encounter with the officers. Klinger repeats this false claim in his expert report. It is absolutely of no consequence to any issue in this case whether the K-9 officer had cleared the barn before Morris obstructed, resisted, and assaulted these three officers. The evidence and even Morris' own admissions indicate the barn had not been cleared until after Morris was in custody. Regardless, all three officers reasonably believed the suspect was hiding in the barn and were waiting on K-9 to search it when Morris interfered.

A reasonable officer, under these facts, would have believed that probable cause existed to detain Morris and then arrest him for obstruction. As Morris' violent conduct escalated, a reasonable officer would have believed probable cause existed for Morris' arrest for obstruction and felony assault.

Klinger's opinions contained in his report are unreliable and inadmissible. His opinions ignore the United States Supreme Court's legal mandates regarding "reasonableness" and law enforcement training regarding detention and use of force. Specifically, Klinger fails to analyze the facts in this case under the relevant and appropriate methodology that use of force is judged objectively, from the perspective of the officer who uses force, based on facts known to the officer at the time, and without 20/20 hindsight. (Ex. 1, Ryan Declaration, 107)

[S]o long as "a reasonable officer could have believed his conduct was justified", a plaintiff cannot "avoi[d] summary judgment by simply producing an expert's report that an

3

officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." *City and County of San Francisco, Calif. V. Sheehan,* 575 U.S. 600, 135 S.Ct. 1765, 1777, 191 L.Ed. 2d 856 (2015) citing *Billington v. Smith,* 292 F.3d 1177 at 1189 (CA 9 2002). Cf. *Saucier v. Katz,* 533 U.S. 194, 216, n.6, 121 S.Ct. 2151, 150, L.Ed. 2d 272 (2001)

### **KLINGER'S OPINIONS ARE UNRELIABLE AND INADMISSIBLE**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The United States Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 81993, that expert scientific testimony is admissible only if it is both relevant and reliable. The *Daubert* factors are applied to expert testimony based not only on scientific knowledge but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd., v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999).

In evaluating the admissibility of expert testimony, "the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony". *Schulenberg v. BNSF*

4

*Railway Company,* 911 F. 3d 1276, 1282 (10th Cir. 2018) citing *United States v. Nacchio,* 555 F.3d 1243, 1241 (10th Cir. 2009). If the expert is sufficiently qualified, the district court "must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology". *Id.* at 1283.

Here, Klinger's opinions fail to satisfy *any* of the four Rule 702 and *Daubert* requirements. First, his opinions are not helpful to a jury because he is unable to come to a conclusion about any issue. Klinger's expert report headings are:

1. **It is unclear whether the detention of plaintiff Jack Morris was reasonable, appropriate, and in accord with generally accepted police custom and practice.**

2. **If the barn in question had been "cleared" by Officer Williams at some point during the initial detention of Mr. Morris, then any use of physical force by Tulsa PD personnel against Mr. Morris that occurred after that point was unreasonable, inappropriate, and inconsistent with generally accepted custom and practice regarding the use of physical force.**

3. **If the barn in question had <u>not</u> been "cleared by Officer Williams until <u>after</u> the struggle between Mr. Morris and Officer First, Officer Dupler, and Sergeant Dodd had ended <u>and</u> if the version of events between Mr. Morris and Officer First, Officer Dupler, and Sgt. Dodd put forth by Officer First, Officer Dupler, and Sergeant Dodd is accurate, then the various forceful acts performed by Officer First, Officer Dupler, and Sergeant Dodd against Mr. Morris were reasonable, appropriate, and in accord with generally accepted police custom and practice regarding the use of physical force.**

4. **If the barn in question had <u>not</u> been "cleared by Officer Williams until <u>after</u> the struggle between Mr. Morris and Officer First, Officer Dupler, and Sergeant Dodd had ended <u>and</u> if the version of events between Mr. Morris and Officer First, Officer Dupler, and Sgt. Dodd put forth by Mr. Morris is accurate, then the various forceful acts performed by Officer First, Officer Dupler, and Sergeant Dodd against Mr. Morris were unreasonable, inappropriate, and inconsistent with generally accepted police custom and practice regarding the use of physical force.**

(Exhibit 2, Klinger Report, page 2-4).  Klinger's opinions are not helpful to a jury because he essentially states he cannot come to a conclusion regarding the reasonableness of the officers' use of force *until* the jury reaches a verdict on the facts.

Second, Klinger's opinions are not based on sufficient facts.  According to his report, he failed to review Jack Morris' deposition testimony.  (Ex. 2, Klinger Report, page 1). This failure is critical given that Jack Morris admitted that the police officers told him that "they were after a suspect that might be in my barn."  He also admitted that Sgt. Dodd told him "they were **getting ready** to turn the canine loose or something".  Morris also testified that Sgt. Dodd was standing next to the K-9 officer who "had a canine, a little canine dog." (Ex. 3, Morris Deposition Excerpts, 71:3-15; 72:6-11 (emphasis added)

Klinger claims to have reviewed the police reports generated in this case, but fails to mention Officer Rodriguez's Supplemental Report that clearly states that **after** Morris was in custody, the K-9 advised him that the suspect was not in the barn. (Ex. 4, Rodriguez Supplemental, page 2.)  Officer Rodriguez confirmed these events in his deposition.  (Ex. 5, Rodriguez Deposition Excerpts, 57:11-16; 60:11-25). Sgt. Dodd also testified that Morris and the K-9 unit *arrived* simultaneously.  (Ex. 6, Dodd Deposition Excerpts, 46:13-17; 48:5-10). Klinger's opinions are based entirely on **whether** the K-9 had cleared the barn, yet he ignores all evidence that the barn had **not** been cleared at the time of Morris' arrest.

Klinger fails the third Rule 702 and *Daubert* requirement because his opinions are not the "product of reliable principles and methods".  Klinger ignores the United States Supreme Court definition of "reasonableness" upon which all use of force is based. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 2020 hindsight. *Graham v. Connor,* U.S. 386,

396, 109 S.Ct. 1865, citing *Terry v. Ohio,* 392 U.S. 1, 22-27. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id* at 397.

Klinger also fails to satisfy the fourth Rule 702 (*Daubert*) requirement because he has not "reliably applied the principles and methods to the facts of the case". Klinger's failure to acknowledge and apply the "reasonableness" test set forth by the United States Supreme Court in *Graham v. Connor* and *Terry v. Ohio,* 392 U.S. 1, 22-27, is, by definition, failure to apply the principles and methods used in evaluating a use of force case.

In applying Rule 702, [t]he court's inquiry is "a flexible one" but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95. "[C]onclusions and methodology are not entirely distinct from one another." *General Electric Co. v. Joiner* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed. 2d 508 (1997)

> The Tenth Circuit discussed this very issue and held:
>
> It is an elusive process to divine the difference between a methodology and what constitutes a change from that methodology, therefore, under *Daubert,* we simply hold that 'any step that renders the analysis unreliable renders the expert's testimony inadmissible'. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.

*Attorney General of Oklahoma v. Tyson Foods, Inc.* 565 F.3d 769, 780 (10th Cir. 2009) citing *Mitchell v. Gencorp Inc.,* 165 F.3d 778, 782 (10th Cir. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3rd Cir. 1994) (emphasis omitted)). Where an expert fails to meet just one of the Rule 702 requirements, his opinions are inadmissible. Here, Klinger fails **all** of the Rule 702 requirements and his opinions must be found to be inadmissible.

## **CONCLUSION**

Defendants respectfully request this Court to exclude at trial, the opinions and report of Morris' use of force expert David Klinger. His opinions do not meet any of the requirements for expert testimony under Federal Rule of Evidence Rule 702.

                                      Respectfully submitted,

                                      CITY OF TULSA, OKLAHOMA
                                      a municipal corporation

                                      DAVID E. O'MEILIA,
                                      City Attorney

By:    /s/ T. Michelle McGrew
          T. Michelle McGrew, OBA #20279
          Senior Assistant City Attorney
          R. Lawson Vaughn, III, OBA #21557
          Assistant City Attorney
          175 E. Second Street, Suite 685
          Tulsa, Oklahoma 74103
          Telephone (918) 596-7717
          Facsimile (918) 596-9700
          ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Eric W. Stall estall@swabstall.com
Zachary Underwood zunderwood@swabstall.com
Benjamin Fu bfu@swabstall.com
ATTORNEYS FOR PLAINTIFF


/s/T. Michelle McGrew
T. Michelle McGrew