UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACK TALBOT MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-0073-CVE-JFJ |
| | ) |
| CITY OF TULSA, | ) |
| JOSHUA E. DUPLER, | ) |
| ANTHONY FIRST, and | ) |
| KURT DODD, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court are the following motions: Defendants' Motion in Limine to Exclude Plainitff's Expert David Klinger (Dkt. # 54); Defendants' Motion in Limine to Exclude Evidence of Media Articles Regarding Arrest of Jack Morris (Dkt. # 55); Defendants' Motion in Limine to Exclude Evidence of Post-Incident Voicemail Recording of Jack Morris (Dkt. # 56); Defendants' Motion in Limine to Exclude any Mention of Defendants' Internal Affairs Investigations (Dkt. # 57); and Defendants' Motion in Limine to Exclude any Mention of Audio/Video of Phone Call (Dkt. # 58). Plaintiff has filed a response (Dkt. # 63) to defendants' motion to exclude the testimony of plaintiff's expert witness, David Klinger, but plaintiff has not responded to any of the other motions in limine filed by defendants. Under LCvR 7.2(e), any non-dispositive motion may be deemed confessed if the party opposing a motion fails to file a response. The Court finds that defendants' unopposed motions in limine (Dkt. ## 55, 56, 57, 58) should be granted pursuant to LCvR 7.2(e).

This case arose out of an incident in which Tulsa Police Department (TPD) officers were searching for a robbery suspect on defendant's property, and three police officers used force to detain

and arrest defendant after he allegedly engaged in aggressive behavior toward a police officer. The incident occurred on August 16, 2017 after a robbery suspect fled on foot from a stolen vehicle, and officers attempted to set up a perimeter to apprehend the suspect. Plaintiff's property was near the location where the stolen vehicle had been abandoned, and the property included a small pasture or field in front of a barn that was surrounded by a fence. Plaintiff arrived at the barn and attempted to enter the fenced area to calm a horse that had run out of the barn, and a confrontation ensued between plaintiff and several police officers. TPD Officers Joshua Dupler, Anthony First, and Kurt Dodd used force to detain and arrest plaintiff, and plaintiff suffered a fractured left elbow and several contusions and lacerations on his face. Beyond this general outline of the August 16, 2017 incident, the parties have presented completely divergent version of the events.[1]

Morris filed this case in Tulsa County District Court alleging claims against the City of Tulsa (the City), Dupler, First, and Dodd, and the case was removed to this Court. Morris asserts claims of assault and battery (first claim for relief) and negligence (second claim for relief) against Dupler, First, and Dodd, and he alleges that the City is vicariously liable for the same conduct. Morris alleges claims under 42 U.S.C. § 1983 against Dupler, First, and Dodd for the use of excessive force (third claim for relief) and unlawful arrest (eighth claim for relief), and he alleges § 1983 claims against the City for maintaining a custom or policy of promoting the use of excessive force (sixth claim for relief) and failure to train or supervise officers concerning the use of excessive force (seventh claim for relief). Morris also asserts negligence claims against the City for maintaining a policy that promotes the use of excessive force (fourth claim for relief) and failing to train or

---

[1] The Court provides only a brief summary of the incident leading to plaintiff's arrest in this opinion and order, and a more thorough review of the evidence is contained in the opinion and order (Dkt. # 82) ruling on defendants' motions for summary judgment.

supervise TPD officers who have a history of using excessive force (fifth claim for relief). Claims one through five remain pending after rulings on motions to dismiss and motions for summary judgment. Dkt. ## 44, 82.

"The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'" Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008). However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (Apr. 22, 2016). Plaintiff filed this case in federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law. Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. Id. The parties are advised that all ruling on the motions in limine are preliminary.

Defendants ask the Court to exclude the testimony of plaintiff's expert, Klinger, because Klinger's testimony would not be helpful to the jury and his opinions are not based on a reliable methodology. Klinger's report (Dkt. # 54-2) states that he reviewed the deposition testimony of seven TPD officers, incident reports, the second amended petition, and TPD policies concerning the use of force. Klinger states that there is conflicting testimony about the sequence of events, particularly whether the barn had been "cleared" before plaintiff arrived, and he does not attempt to resolve factual disputes presented by the evidence. Dkt. # 54-2, at 3-5. Instead, Klinger states that

3

it is "unclear" whether officers had a legitimate basis to detain plaintiff, because there is disputed evidence as to whether the officers could reasonably have believed that a suspect was hiding in the barn. Dkt. # 54-2, at 3. If the barn had already been cleared, police had no lawful basis to prevent Morris from accessing his own property and the use of any force against him was unreasonable. Id. at 4. However, if the altercation began before officers had cleared the barn, the amount of force described in the deposition testimony of First, Dupler, and Dodd may have been reasonable under the circumstances if Morris initiated the confrontation with aggressive behavior and continued to resist arrest. Id. Klinger reviewed Morris' version of the events and opined that the amount of force used against Morris would be unreasonable if he did not act aggressively toward the officers or offer any physical resistance. Id. at 5. Defendants have also retained an expert witness to offer opinions about the reasonableness of the use of force by police officers when arresting plaintiff. Defendants' expert, John Ryan, offers conclusive opinions that the officers acted reasonably by detaining and using force to arrest plaintiff. Ryan clearly reviewed Morris' deposition testimony, but he rejects key aspects of Morris' version of the events based on other evidence in the record and he assumes that officers reasonably believed that the suspect could be in the barn when the encounter with Morris occurred. Dkt. # 54-1, at 42-44.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702. The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a Daubert challenge to the admissibility of expert testimony. First, the court

should make a preliminary finding that the expert is qualified to testify. Id. at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

The Court will initially consider defendants' argument that Klinger's opinions would not be helpful to the jury, because Klinger fails to actually come to a conclusion about any issue. Under Rule 702(a), an expert may testify in the form of an opinion or otherwise if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evic. 702(a). "Relevant expert testimony must 'logically

5

advance a material aspect of the case' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" United States v. Garcia, 635 F.3d 472 (10th Cir. 2011). Expert testimony can be excluded on the grounds that the testimony "states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993). Expert testimony concerning the credibility of witnesses is prohibited, because the jury can make its own determinations of witness credibility and expert testimony on this issue is "prejudicial and unfairly influences the jury." United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014).

The Court initially questions whether expert testimony from any party as to the reasonableness of the force used by the Dupler, Dodd, and First would be helpful to the jury, because the parties are unable to agree on even a general version of the events leading to the use of force. Much of the evidence in this case will be in the form of eyewitness testimony from plaintiff and other officers who were present when he was arrested, and it will be up to the jury to assess the credibility of these witnesses and resolved factual disputes. There is a substantial risk that expert witnesses will invade the province of the jury by offering opinions as to the credibility of witnesses, and this risk is highlighted by the opinions of defendants' expert witness, Ryan. In many ways, Klinger's approach of offering conditional opinions is preferable, because this leaves issues of witness credibility and the resolution of disputed factual issues up to the jury and provides guidance depending on how the jury resolves disputed issues of fact. Klinger correctly notes that it is unclear from the deposition testimony whether the barn had been cleared before plaintiff and First had even begun talking, and First would have had no reason to order defendant to refrain from entering the fenced area if the barn had already been cleared. In contrast, Ryan appears to resolve ambiguities

in the deposition testimony on key points in favor of the defendants' deposition testimony, and he rejects Morris' deposition testimony concerning the cause of the physical encounter in order to reach more conclusive expert opinions concerning the reasonableness of the use of force. Dkt. # 54-1, at 40-43. Defendants have raised a legitimate argument that Klinger's more equivocal opinions may not be helpful to the jury, but it is also possible that Ryan's proposed expert testimony would invade the jury's role in finding facts and weighing the credibility of witnesses. Defendant's request to exclude Klinger's testimony under Rule 702(a) should be denied.

Defendants claim that Klinger's opinions are not based on sufficient facts and are unreliable, because Klinger may not have reviewed Morris' deposition testimony and he did not specifically cite a supplemental report by TPD Officer Israel Rodriguez in his expert report. The Court finds that both of these issues can be raised by defense counsel when they cross-examine Klinger at trial, but neither issue tends to show that Klinger employed an unreliable methodology in order to reach his opinions. Rodriguez states in his supplemental report that the canine search of the barn was underway when Morris initiated a confrontation with police officers after being told to step away from a gate. Dkt. # 54-4, at 2. The report states that the officer conducting the canine search advised Rodriguez that the suspect was not in the barn after Morris was already in custody. Id. Assuming that Rodriguez would testify to these facts at trial, there would still be conflicting evidence in the record as to the sequence of events, and Klinger properly chose not to disregard conflicting evidence when preparing his expert report. Defendants also argue that Klinger did not review Morris' deposition testimony when drafting his report. Dkt. # 54, at 6. Klinger did not list Morris' deposition as part of the materials that he reviewed to prepare his report, but it is clear that he was familiar with Morris' version of the events. Klinger provides a summary of the events from the

perspective of the officers, but he also provides a separate summary based on Morris' statements. Dkt. # 54-2. This summary of Morris' statements is consistent with Morris' deposition testimony, and Klinger was clearly familiar with Morris' version of the events when he drafted his expert report. See Dkt. # 82, at 6-7 (summary of Morris' deposition testimony).[2] The Court finds that defendant's motion to exclude Klinger's testimony (Dkt. # 54) is denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion in Limine to Exclude Evidence of Media Articles Regarding Arrest of Jack Morris (Dkt. # 55), Defendants' Motion in Limine to Exclude Evidence of Post-Incident Voicemail Recording of Jack Morris (Dkt. # 56), Defendants' Motion in Limine to Exclude any Mention of Defendants' Internal Affairs Investigations (Dkt. # 57), and Defendants' Motion in Limine to Exclude any Mention of Audio/Video of Phone Call (Dkt. # 58) are **granted** pursuant to LCvR 7.2(e).

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude Plainitff's Expert David Klinger (Dkt. # 54) is **denied.**

**DATED** this 15th day of December, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[2] Defendants could also be arguing that Klinger ignored Supreme Court precedent concerning the reasonableness of an officer's conduct under the Fourth Amendment. Dkt. # 54, at 3, 7. Although Klinger does not use the precise language from Supreme Court decisions, there is nothing in his expert report suggesting that he used a legally inaccurate interpretation of the term "reasonableness," and this argument plainly goes to Klinger's conclusions rather than his methodology.